UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID KURZ and RAYMOND HEINZL,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

    v.

FIDELITY MANAGEMENT &
RESEARCH COMPANY and FMR CO.,
INC.,

      Defendants.

Case No. 07-cv-709-JPG

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

    This matter is before the Court on preliminary review of the allegations of federal subject matter jurisdiction contained in the notice of removal filed by the defendants Fidelity Management & Research Company ("Fidelity") and FMR Co., Inc. ("FMR").  *See Cox v. Strauch*, Civil No. 07-680-GPM, 2007 WL 2915593, at *1 (S.D. Ill. Oct. 5, 2007) (reviewing sua sponte the allegations of federal subject matter jurisdiction contained in a defendant's notice of removal); *Board of Educ. of Decatur Sch. Dist. No. 61 v. Rainbow/Push Coal.*, 75 F. Supp. 2d 916, 918 (C.D. Ill. 1999) (citing *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986)) (same); *Waymar Med., Inc. v. American Med. Elecs., Inc.*, 786 F. Supp. 754, 755 (E.D. Wis. 1992) (same).  For the following reasons, the plaintiffs David Kurz and Raymond Heinzl are hereby **ORDERED TO SHOW CAUSE** why this action should not be dismissed pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. 105-353, 112 Stat. 3227 (codified at 15 U.S.C. § 77p(b)-(f) and 15 U.S.C. § 78bb(f)).

**I. <u>Background</u>**

This action is the successor to *Kurz v. Fidelity Management & Research Co.*, Civil No. 07-592-JPG (S.D. Ill. filed Aug. 17, 2007), in which Kurz alleged federal subject matter jurisdiction on the basis of 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). *See Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-cv-592-JPG, 2007 WL 2746612, at *2 (S.D. Ill. Sept. 18, 2007); *Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-cv-592-JPG, 2007 WL 2746612, at *1 (S.D. Ill. Sept. 18, 2007). Thereafter, the Court ordered Kurz to show cause why this action should not be dismissed for lack of federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(9)(A) and (C), the so-called "securities exception" to federal diversity jurisdiction under CAFA. *See Kurz*, 2007 WL 2746612, at **2-4. *See also Davis v. Chase Bank U.S.A., N.A.*, 453 F. Supp. 2d 1205, 1207-08 (C.D. Cal. 2006). The Court further directed Kurz to show cause whether, if federal subject matter jurisdiction did not exist in Case No. 07-592 under CAFA, such jurisdiction nonetheless was proper pursuant to SLUSA. *See Kurz*, 2007 WL 2746612, at *4. Kurz then voluntarily dismissed Case No. 07-592 by notice pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure. *See Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-CV-592-JPG, 2007 WL 2908918 (S.D. Ill. Oct. 4, 2007).

Following the voluntary dismissal of Case No. 07-592, Kurz refiled his claims in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, joining Heinzl as a party plaintiff. The case was timely removed from state court to this Court, with federal subject matter jurisdiction asserted on the basis of 28 U.S.C. § 1331, including SLUSA. After removal, this case was assigned initially to United States District Judge G. Patrick Murphy. However, in conformity with the Court's policy that related cases – in this instance, Case No. 07-592 and this

case – should be concentrated before the same judge, *see Vogel v. Merck & Co.*, 476 F. Supp. 2d 996, 998 (S.D. Ill. 2007), the case subsequently was reassigned to the undersigned United States District Judge for all further proceedings.

The gravamen of the claims asserted by Kurz and Heinzl has been outlined by the Court in a previous order in Case No. 07-592, *see Kurz*, 2007 WL 2746612, at **1-2, but bears some repeating here.  Kurz and Heinzl allege that they are former investors in investment portfolios managed by Fidelity and FMR, who are alleged to be registered investment advisers or affiliated persons of such advisers.  *See* 15 U.S.C. § 80b-2(a)(11), (a)(12); 15 U.S.C. § 80b-3.  Kurz and Heinzl allege that Fidelity and FMR entered into confirmation agreements with securities brokers executing portfolio transactions directed by the defendants, and that an implied term of those agreements were rules of the National Association of Securities Dealers ("NASD") and the New York Stock Exchange ("NYSE") requiring investment advisers to obtain "best execution" for their customers in executing portfolio transactions for those customers.  This duty of best execution, according to the complaint, "required Fidelity and FMR to choose execution brokers on the basis of the most favorable practicable execution costs, taking into consideration the size of each transaction, the number of transactions per year, the market impact of the transaction, brokerage commissions, services provided by the broker, and other considerations."  Complaint ¶ 10.  Kurz and Heinzl allege that the agreements imposed on Fidelity and FMR a contractual duty of best execution enforceable by the defendants' customers.

Kurz and Heinzl allege that Fidelity and FMR breached their contractual duty by retaining Jeffries & Co. ("Jeffries") to execute portfolio transactions for the defendants' customers in return for lavish gifts to the defendants' traders from Jeffries.  According to the complaint, as redress for this breach of the duty of best execution, the chairman of Fidelity's

board of trustees E.C. Johnson, III, agreed to pay $42 million plus interest to Fidelity's family of mutual funds. Kurz and Heinzl assert claims for breach of contract against Fidelity and FMR based on the defendants' alleged violations of their duty of best execution as contained in the agreements. The plaintiffs seek to represent a class of persons who were clients of Fidelity and FMR from May 1, 2002, until October 31, 2004, and who liquidated their investments and/or terminated their management agreements with the defendants before December 21, 2006, and whose investment portfolios included at least one transaction in which the defendants used Jeffries as the executing broker.

## II. Discussion

### A. Federal Question Jurisdiction

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In general, of course, federal courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As noted, the asserted basis for federal subject matter jurisdiction in this case is Section 1331. The usual test of whether an action arises under federal law for purposes of so-called "federal question" jurisdiction pursuant to Section 1331 is the "well-pleaded complaint" rule, which provides generally that a case arises under federal law within the meaning of the statute only when federal law appears on the face of a plaintiff's complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152-53 (1908); *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995). As Justice Holmes explained, "A suit arises under the law that creates the cause of

4

action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). *See also In re Application of County Collector of Winnebago County, Ill.*, 96 F.3d 890, 895 (7th Cir. 1996); *Clevenger v. Eastman Chem. Co.*, No. 07-cv-148-DRH, 2007 WL 2458474, at *2 (S.D. Ill. Aug. 24, 2007); *Kuntz v. Illinois Cent. R.R. Co.*, 469 F. Supp. 2d 586, 589 (S.D. Ill. 2007). In this instance, as discussed, Kurz and Heinzl allege only state-law claims for breach of contract. However, that is not quite the end of the matter, in light of certain recognized exceptions to the well-pleaded complaint rule, specifically, the doctrine of a "substantial federal question" and the doctrine of "complete preemption," both of which are discussed infra.

### 1. Substantial Federal Question

The substantial federal question doctrine provides generally that "[e]ven though state law creates [a plaintiff's] cause of action, [the] case still might 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983). *See also Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936); *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 195-99 (1921); *International Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912, 915 (7th Cir. 2001); *Kuntz*, 469 F. Supp. 2d at 594-95. In this instance Fidelity and FMR argue that this case presents a substantial question of federal law because the duty of best execution they are alleged to have breached is a creature of federal law, and because resolution of this case necessarily will entail the construction of federal securities laws and regulations promulgated thereunder. However, the Court is not persuaded that this case comes within the scope of the substantial federal question doctrine for purposes of removal to federal court.

The duty of best execution, although extensively codified in federal law governing securities, originates in familiar common-law principles of agency.  In *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266 (3d Cir. 1998), the court explained:

> The duty of best execution, which predates the federal securities laws, has its roots in the common law agency obligations of undivided loyalty and reasonable care that an agent owes to his principal . . . . Since it is understood by all that the client-principal seeks his own economic gain and the purpose of the agency is to help the client-principal achieve that objective, the broker-dealer, absent instructions to the contrary, is expected to use reasonable efforts to maximize the economic benefit to the client in each transaction.
>
> The duty of best execution thus requires that a broker-dealer seek to obtain for its customer orders the most favorable terms reasonably available under the circumstances.

*Id.* at 270 (collecting cases).  *See also Zannini v. Ameritrade Holding Corp.*, 667 N.W.2d 222, 230-31 (Neb. 2003) (reversing a grant of summary judgment as to a claim that a broker violated its duty of best execution under state law); Restatement of Agency (Second) § 424 (1958) (stating that an agent must "use reasonable care to obtain terms which best satisfy the manifested purposes of the principal."); Francis J. Facciolo, *A Broker's Duty of Best Execution in the Nineteenth and Early Twentieth Centuries*, 26 Pace L. Rev. 155 (2005) (tracing the best execution obligation back to state law).  As the Securities and Exchange Commission ("SEC") has recognized, the "duty of best execution derives from common law agency principles and fiduciary obligations, and is incorporated both in [self-regulating organization] rules and, through judicial and [SEC] decisions, in the antifraud provisions of the federal securities laws." *Order Execution Obligations*, Exchange Act Release No. 34-37619, 62 SEC Docket 1795, 1996 WL 493303, at *51 (Aug. 29, 1996).  Thus, it is not the case that, as Fidelity and FMR assert in their notice of removal, a claim based on an agent's duty of best execution necessarily arises under federal law.

To the extent that federal law forms an element of the state-law claims asserted by Kurz and Heinzl, it is well settled that a claim for a violation of state law based upon a breach of a duty created by federal law does not present a substantial federal question for purposes of federal question jurisdiction.  As the Supreme Court of the United States admonished recently, "[a] general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would . . . herald[ ] a potentially enormous shift of traditionally state cases into federal courts."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 319 (2005) (citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 811-12 (1986)).  Accordingly, federal courts must be cautious in entertaining "state claims with embedded federal issues" lest they "materially affect, or threaten to affect, the normal currents of litigation" as between federal and state courts.  *Id*. at 318, 319.  *See also Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 908-12 (7th Cir. 2007) (holding that state-law negligence claims did not present a substantial federal question, although some of the applicable standards of care were furnished by regulations promulgated by the Federal Aviation Administration); *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 729-32 (N.D. Ill. 2007) (holding that products liability and negligence claims arising out of an airplane crash during a landing approach were not removable on the basis of federal question jurisdiction, notwithstanding the fact that federal law and regulations concerning airplane safety set the standard of care for the state-law claims); *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1095 (S.D. Ill. 2007) (allegations of negligence based upon a defendant's violation of federal railroad safety regulations did not present a substantial federal question:  "[A] plaintiff's invocation of federal law as the source of a duty under state law is simply insufficient to create federal question jurisdiction.").  In this instance, assuming that federal law constitutes an element of the state-law claims for breach of contract alleged by Kurz

7

and Heinzl, this does not mean that this case presents a substantial federal question so as to arise under federal law for purposes of removal to federal court.

### 2. Complete Preemption

Far more pertinent to this case than the substantial federal question doctrine is the doctrine of complete preemption. Complete preemption occurs when "the preemptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Nelson v. Stewart*, 422 F.3d 463, 466-67 (7th Cir. 2005) (quoting *Caterpillar*, 482 U.S. at 393). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 467. "In such situations, the federal statute . . . not only preempt[s] state law but also authorize[s] removal of actions that sought relief only under state law." *Id.* The complete preemption doctrine brings the Court squarely to the issue of the applicability of SLUSA to this case, inasmuch as the statute, as will be discussed in more detail presently, completely preempts state-law class actions as to certain kinds of claims involving securities, making federal law the exclusive remedy for such claims and authorizing a federal forum for those claims through removal. "SLUSA was intended to completely preempt the field of certain types of securities class actions by essentially converting a state law claim into a federal claim and creating federal jurisdiction and venue for specified types of state securities fraud claims." *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir. 2003) (emphasis omitted). *See also Schnorr v. Schubert*, No. CIV-05-303-M, 2005 WL 2019878, at *3 (W.D. Okla. Aug. 18, 2005); *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC.*, No. 01 Civ. 2946(DLC), 01 Civ. 7670(DLC), 2004 WL 444554, at **2-3 (S.D.N.Y. Mar. 10, 2004).

In other words, when SLUSA applies to a state-law class action regarding securities, "no room remains for any state regulation and the complaint [is] 'necessarily federal in character'" for purposes of federal question jurisdiction. *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 787 (7th Cir. 2002) (quoting *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000)).

SLUSA amended the Securities Act of 1933 and the Securities Exchange Act of 1934 to preclude the maintenance of certain state-law claims regarding securities as class actions, and to provide for the removal to federal court of class actions asserting those claims. Specifically, SLUSA amended the 1933 Act to provide, in pertinent part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
>
> * * * *
>
> Any covered class action brought in any State court involving a covered security . . . shall be removable to the Federal district court for the district in which the action is pending[.]

15 U.S.C. § 77p(b), (c). The same provisions were added to the 1934 Act. *See* 15 U.S.C. § 78bb(f)(1)-(2).[1] Therefore, SLUSA only precludes a claim where four conditions are met: (1) the underlying suit is a "covered class action"; (2) the claim is based on state law; (3) the claim concerns a "covered security"; and (4) the plaintiff alleges "a misrepresentation or

---

1. For the sake of simplicity, henceforth the Court, in citing SLUSA, will cite to the statutory amendments of the 1933 Act, which, as noted, are identical to the amendments made by SLUSA to the 1934 Act.

omission of material fact," or "a manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security." *See Green v. Ameritrade*, 279 F.3d 590, 596 (8th Cir. 2001); *Beckett v. Mellon Investor Servs., LLC*, No. C06-5245 FDB, 2006 WL 3249189, at *2 (W.D. Wash. Nov. 8, 2006); *Golub v. Hilb, Rogal & Hobbs* Co., 379 F. Supp. 2d 639, 642 (D. Del. 2005); *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 603 (D. Del. 2002); *Prager v. Knight/Trimark Group, Inc.*, 124 F. Supp. 2d 229, 231 (D.N.J. 2000); *Haney v. Pacific Telesis Group*, No. CV00758AHMMANX, 2000 WL 33400194, at *19 (C.D. Cal. Sept. 19, 2000); *Hines v. ESC Strategic Funds, Inc.*, No. 3:99-0530, 1999 WL 1705503, at *3 (M.D. Tenn. Sept. 17, 1999).  *See also Nekritz v. Canary Capital Partners, LLC*, No. Civ. 03-5081(DRD), 2004 WL 1462035, at *3 (D.N.J. Jan. 12, 2004); *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 381 (E.D.N.Y. 2002); *Simon v. Internet Wire, Inc.*, No. CV0013195CBM (RNBX), 2001 WL 688542, at *2 (C.D. Cal. Apr. 3, 2001).

Here, as discussed, the claims asserted by Kurz and Heinzl arise under state law, and it appears that this is a covered class action, defined by SLUSA as follows:

> (2) Covered class action –
> (A) In general
> The term "covered class action" means –
> (i) any single lawsuit in which –
> (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or
> (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or
> (ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which –
> (I) damages are sought on behalf of more than 50 persons; and

>   (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 77p(f)(2).  It appears also that the claims before the Court involve covered securities within the meaning of SLUSA.  The statute provides, in pertinent part,

> The term "covered security" means a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b) of this title at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under this subchapter pursuant to rules issued by the [SEC] under section 77d(2) of this title.

15 U.S.C. § 77p(f)(3).  Covered securities for purposes of 15 U.S.C. § 77r(b) are defined as follows:

> (b) Covered securities
> For purposes of this section, the following are covered securities:
> (1) Exclusive Federal registration of nationally traded securities
> A security is a covered security if such security is –
> (A) listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market (or any successor to such entities);
> (B) listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the [SEC] determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing standards applicable to securities described in subparagraph (A); or
> (C) is a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A) or (B).
> (2) Exclusive Federal registration of investment companies
> A security is a covered security if such security is a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940 [15 U.S.C.A. § 80a-1 et seq.].

15 U.S.C. § 77r(b).

Turning then to the question of whether the claims alleged by Kurz and Heinzl involve a misrepresentation or omission of material fact or a manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security such as to bring them within the scope of SLUSA, it appears that they do.  In analyzing SLUSA preclusion, of course,

11

the Court is guided by the substance rather than the form of a claim. Thus, the fact that the plaintiffs' claims are couched as claims for breach of contract rather than for misrepresentation is not dispositive as to the question of whether those claims are precluded under SLUSA. "The issue of preemption [under SLUSA] . . . hinges on the content of the allegations – not on the label affixed to the cause of action." *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004). *See also Denton v. H & R Block Fin. Advisors, Inc.*, No. 01 C 4185, 2001 WL 1183292, at *3 (N.D. Ill. Oct. 4, 2001) (in evaluating SLUSA preclusion, the focus is on the substance of the claim and not the plaintiff's characterization of it); *Abada v. Charles Schwab & Co.*, 68 F. Supp. 2d 1160, 1165-66 (S.D. Cal. 1999) (same).

In *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684 (S.D.N.Y. 2006), the plaintiffs alleged that certain contracts with a securities broker required the broker to abide by the rules and customs of the NASD, NYSE, and other self-regulatory organizations. *See id*. at 687. The plaintiffs further claimed that the broker breached the contracts by failing to provide objective research and recommendations and instead providing self-serving, biased information. *See id*. at 687-88. Although the complaint alleged only a breach of contract claim, the court found that the complaint alleged misrepresentations or omissions of material fact in connection with purchases or sales of a covered security within the meaning of SLUSA. "I conclude without difficulty that Plaintiffs' claim is a securities fraud wolf dressed up in a breach of contract sheep's clothing. The gravamen of the Amended Complaint . . . is that conflicts of interest were created . . . which were undisclosed to Plaintiffs and the class members." *Id*. at 693. "While Morgan Stanley customers believed that they were paying for and receiving informed and objective investment advice, they actually received recommendations based on Morgan Stanley's existing or desired investment banking deals . . . . Plaintiffs describe this

conduct as a breach by Morgan Stanley . . . of the standardized contracts with the Plaintiffs and Class members, . . . and so it may have been, but it is also a quintessential example of a fraudulent omission of a material fact under the federal securities laws." *Id*. Thus, the court held that the claims were precluded by SLUSA. *See id*.

In *Rabin v. JPMorgan Chase Bank, N.A.*, No. 06 C 5452, 2007 WL 2295795 (N.D. Ill. Aug. 3, 2007), the plaintiffs, who were beneficiaries of a trust maintained by the defendant, alleged that the defendant breached fiduciary duties to trust beneficiaries by unilaterally investing fiduciary account assets into its proprietary mutual fund without regard to whether such investments were in the best interests of the beneficiaries. *See id*. at *1. The plaintiffs further contended that the defendant generated undue profits by charging excessive fees. *See id*. The plaintiffs maintained that their class action claims for breach of fiduciary duty and unjust enrichment were "merely ancillary to and not predicated upon" material misrepresentations and omissions. *Id*. at *6. The court rejected that argument, reasoning that attempts to disguise securities fraud claims as claims for breach of fiduciary duty are "not enough to evade preclusion of those claims under SLUSA." *Id*. (quoting *Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 702 (S.D. Ill. 2007)). Thus, the court analyzed the substance of the allegations and found that misrepresentations and omissions of material facts relating to the purchase of mutual fund shares were "the heart of the Amended Complaint," thereby triggering preclusion of the class claims under SLUSA. *Id*.

In *Dommert v. Raymond James Financial Services, Inc.*, No. CIV A. 1:06-CV-102, 2007 WL 1018234 (E.D. Tex. Mar. 29, 2007), the plaintiff alleged that the defendants breached an investment management service agreement and their fiduciary duties by failing to act in the plaintiff's best interest and by failing to disclose material information about fees assessed against

her. *See id*. at \*\*2-3.  Examining the allegations of the complaint as a whole, the court noted that the complaint made "specific references to omissions and failures to disclose" and ruled that the claims were "clearly based upon alleged fraudulent omissions." *Id*. at \*\*7-8.  The court explained further that "[t]he core basis" of the plaintiff's claims was that the defendants "failed to disclose important information . . . , including material details about fees and financial gain retained by [the defendants] . . . , luring investors into paying excessive fees." *Id*. at \*8.  "Whether these alleged failures to disclose are couched in the terms of a fiduciary duty or claims of fraud, they are, in their simplest form, allegations that the Defendants 'omitted' important information from their disclosures to [investors] under the Agreement . . . .  No matter how [the plaintiff] legally characterizes her claims, material misrepresentations and omissions serve as the factual predicate for [her] state law claims." *Id*.  *See also Broadhead Ltd. P'ship v. Goldman, Sachs & Co.*, Civil Action No. 2:06CV009, 2007 WL 951623, at \*\*1-5 (E.D. Tex. Mar. 26, 2007) (dismissing state-law claims for breach of fiduciary duty, breach of contract, and unjust enrichment based on a defendant's alleged failure to disclose all fees and expenses charged to investors because, disregarding the labels assigned to the causes of action, the gravamen of the complaint was omissions of material fact in the form of a failure to disclose fees associated with bond purchases).

The analysis applied in the foregoing authorities appears to apply with equal force in the case at bar.  Although Kurz and Heinzl are at pains in their complaint to avoid terms like fraud and misrepresentation, the basis for their state-law claims of breach of contract is undisclosed conflicts of interest and omissions of material fact by Fidelity and FMR.  Thus, it appears that the claims in this case involve alleged misrepresentations or omissions of material fact within the meaning of SLUSA.  Finally, given that the claims in this case involve alleged violations of the

duty imposed on Fidelity and FMR to obtain best execution for customers in executing portfolio transactions, it appears that those claims are "in connection with" the purchase or sale of securities for SLUSA purposes. *See, e.g., Behlen v. Merrill Lynch*, 311 F.3d 1087, 1094 (11th Cir. 2002) (holding that SLUSA's "in connection with" requirement was satisfied in a case alleging breach of contract, breach of fiduciary duty, misrepresentation, suppression, unjust enrichment, and negligence on the grounds that a brokerage firm and a mutual fund manager sold investors a certain class of fund shares in order to collect excess fees and commissions on the sales); *McCullagh v. Merrill Lynch & Co.*, No. 01 Civ. 7322(DAB), 2002 WL 362774, at *4 (S.D.N.Y. Mar. 6, 2002) (holding that SLUSA's "in connection with" requirement was satisfied in an action seeking disgorgement of allegedly excessive commissions paid to an investment broker).

"The jurisdiction of this court . . . is contingent upon SLUSA's preemption of [the plaintiffs'] state law claims." *Rowinski v. Salomon Smith Barney, Inc*., No. 3:02CV2014, 2003 WL 22740976, at *2 (M.D. Pa. Nov. 20, 2003). If SLUSA precludes the claims in this case, then the Court has original jurisdiction to address this matter and must dismiss those claims; conversely, if SLUSA does not apply, then this case must be remanded to state court. *See id*. *See also Winne v. Equitable Life Assurance Soc'y of U.S.*, 315 F. Supp. 2d 404, 409 (S.D.N.Y. 2003) ("[I]f there *is* subject matter jurisdiction under SLUSA over a specific claim, then the Court *must* dismiss that claim.") (emphasis in original). Because the Court's subject matter jurisdiction in this instance rests upon SLUSA and because it appears from preliminary review of the issue of subject matter jurisdiction in this case that the claims of Kurz and Heinzl are indeed within the scope of SLUSA, the Court will order the plaintiffs to show cause why this case should not be dismissed pursuant to SLUSA.

### III. Conclusion

The plaintiffs Kurz and Heinzl are hereby **ORDERED TO SHOW CAUSE** why this action should not be dismissed pursuant to SLUSA.  The plaintiffs **SHALL** file a brief of not more than twenty-five (25) pages addressing the issue of SLUSA preclusion of the claims asserted in this case not later than thirty (30) days from the date of entry of this Order.  If the defendants Fidelity and FMR wish to address the issue of SLUSA preclusion in this case, the defendants **SHALL** do so by a brief of not more than twenty-five (25) pages filed not later than thirty (30) days from the date of entry of this Order.

**IT IS SO ORDERED.**
**DATED: October 30, 2007**

> s/ J. Phil Gilbert
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**