UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID KURZ and RAYMOND HEINZL on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY; and FMR CO., INC.,<br><br>Defendants. | Case No. 3:07-CV-00709-JPG-DGW<br><br>**CLASS ACTION SOUGHT** |

## PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE

Plaintiffs, David Kurz and Raymond Heinzl, on behalf of themselves and all others similarly situated ("Plaintiffs"), respectfully respond to this Court's Order to Show Cause, dated October 30, 2007. For the reasons discussed below, Plaintiffs request that this Court remand this case to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, State of Illinois.

### I. INTRODUCTION

Plaintiffs are former clients of Fidelity and bring a one-count class action complaint against Defendants Fidelity Management & Research Company and FMR Co., Inc. (collectively "Fidelity" or "Defendants") for breach of contract for breaching their obligation of "best execution." This obligation required Fidelity and FMR to choose execution brokers for the Fidelity investment portfolios on the basis of the most favorable practicable execution costs, taking into consideration the size of each transaction, the number of transactions per year, the market impact of the transaction, brokerage commissions, services provided by the broker, and other considerations.

Plaintiff Kurz originally filed his complaint in this Court asserting federal court jurisdiction on the basis of 28 U.S.C. § 1332, as amended by the Class Action Fairness Act ("CAFA") (codified in various sections of 28 U.S.C.). See Kurz v. Fidelity Management & Research Co. et. al. Case No. 07-592-JPG (S.D. Ill. August 17, 2007)("Kurz I"). On September 18, 2007, this Court entered an Order to Show Cause Why Action Should Not Be Dismissed for Lack of Subject Matter Jurisdiction (the "First Order to Show Cause") in Kurz I.[1] The First Order to Show Cause questioned whether there was jurisdiction under either CAFA or the Securities Litigation Uniform Standards Act ("SLUSA") [codified at 15 U.S.C. § 77p (a) - (f) and 15 U.S.C. § 78bb(f)]. Mr. Kurz's initial analysis led him to believe in good faith that jurisdiction existed under CAFA and that is why he filed his original Complaint in this Court. However, upon revisiting the issue in light of the concerns expressed by the Court in the First Order to Show Cause, Mr. Kurz concluded that no federal jurisdiction under CAFA or SLUSA applied. Accordingly, Mr. Kurz voluntarily dismissed Kurz I and together with Mr. Heinzl filed a new Complaint in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, State of Illinois.

On or about October 9, 2007, Fidelity filed a notice of removal to this Court. On October 30, 2007 this Court once again entered an Order to Show Cause (the "Second Order to Show Cause") questioning only whether jurisdiction under SLUSA exists. As discussed below, SLUSA does not apply and this Court should remand this case to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, State of Illinois.

---

[1] The First Order to Show Cause is Docket Entry No. 12 filed in Kurz I, Case No. 3:07-CV-00592-JPG-PMF and is attached as Exhibit A hereto for the Court's convenience.

2

## II. STANDARD OF REVIEW

Here, as the party seeking removal, Fidelity has the burden of establishing federal jurisdiction. Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993). "Courts should interpret the removal statute narrowly and presume the plaintiff may chose his or her forum." Id. "Any doubt regarding jurisdiction should be resolved in favor of the states." Id.

"The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 32 (2002). "Due regard for the rightful independence of state governments . . . requires that the federal courts scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Id.

This case was originally filed in state court. It is now in this Court based on Fidelity's assertion of federal jurisdiction, and despite the entry of the Second Order to Show Cause, as the proponent of federal jurisdiction, Fidelity retains the burden of establishing federal jurisdiction. Cf. 51 Associates Limited Partnership v. Associated Business Telephone, 165 F.3d 32, 1998 WL 911700 (7th Cir. 1998) (unpublished opinion). As discussed below, Fidelity cannot meet its burden of establishing federal jurisdiction. This case should be remanded to the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, State of Illinois.

## III. SLUSA DOES NOT APPLY

A party seeking to establish that a claim falls within SLUSA's scope must show that the claim satisfies four criteria:

      a.    the action is a "covered class action" under SLUSA,

      b.    the action purports to be based on state law,

3

  c.  the defendant is alleged to have misrepresented or omitted a material fact (or to have used or employed any manipulative or deceptive device or contrivance), and

  d.  the defendant is alleged to have engaged in conduct described by criterion (3) "in connection with" the purchase or sale of a "covered security."

See 15 U.S.C. §§ 78bb(f)(1)-(2); Erb v. Alliance Capital Management, L.P., 423 F.3d 647 (7th Cir. 2005). Here, for the purposes of this Response, we assume that Plaintiffs' claim satisfies the first two criteria. However, the third and fourth criteria do not apply.

**A. The Third Criterion: "Misrepresented or Omitted a Material Fact"**

This criterion cannot be established by Defendants and, without it, this Court lacks jurisdiction. The Complaint contains no allegation (direct or indirect) of fraud, misrepresentation or omission "in connection with" the purchase or sale of securities. The claim at issue is for breach of contract, which has neither fraud nor misrepresentation as an element.[2] Nowhere in the Complaint is there any allegation of fraud, misrepresentation or omission. Indeed, in order to avoid any misunderstanding, the Complaint specifically disclaims any such allegations. Complaint at ¶ 3.

In Kircher v. Putnam Funds Trust, 403 F.3d 478 (7th Cir. 2005) rev'd – U.S. –, 126 S. Ct. 2145 (2006),[3] the Seventh Circuit reviewed and reversed the district court's remand of a market-

---

[2] Breach of contract claims under Illinois law require that plaintiff show: (1) offer and acceptance; (2) consideration; (3) certain terms; (4) performance by plaintiff; (5) defendant's breach; and (6) damages resulting from the breach. Association Benefit Servs., Inc., v. Caremark Rx, Inc., 493 F.3d 841, 849 (7th Cir. 2007) (citing Illinois law).

[3] The Supreme Court reversed Kircher because it found that the Seventh Circuit lacked appellate jurisdiction. We recognize, therefore, that Kircher is not binding authority. Nonetheless, we believe the case is instructive in illustrating the Seventh Circuit's analysis that distinguishes between misrepresentation claims, that are potentially subject to SLUSA, and claims, like that here, for breach of contract to which SLUSA does not apply.

timing case.[4] The Court found that SLUSA applied to the plaintiff's claims. In doing so, the Seventh Circuit distinguished the very type of breach of contract claim at issue here:

> Plaintiffs do not . . . argue in their briefs – and did not maintain at oral argument despite the Court's invitation – that their suits allege mismanagement rather than deceit or manipulation. . . . <u>Nor does any of the suits assert that a mutual fund broke a promise, so that state contract law would supply a remedy.</u>

<u>Id.</u> at 482-83 (emphasis added).

Similarly, although not a SLUSA case, the Seventh Circuit noted in <u>Consolidation Services, Inc. v. KeyBank National Association</u>, 185 F.3d 817, 823 (7th Cir. 1999) that it was error to think that "a promise that is not fulfilled, for whatever reason, is a misrepresentation." "This view would turn every breach of contract into a fraud." <u>Id</u>. Taken together, <u>Kircher</u> and <u>Consolidation Services</u>, show the Seventh Circuit's refusal to conflate breach of contract claims with misrepresentation claims.

Relying in part on the Seventh Circuit's opinion in <u>Consolidation Services</u>, the court in <u>Magyery v. Transamerica Financial Advisors, Inc.</u>, 315 F.Supp. 2d 954 (N.D. Ind. 2004), found that a simple breach of contract action, such as the claim here, did not come within the ambit of SLUSA. In <u>Magyery</u>, the plaintiffs entered into an agreement with their broker, that, among other things, required that the broker not make any transactions on the plaintiffs' behalf without first consulting with the plaintiffs and obtaining their express permission. <u>Magyery</u>, 315 F.Supp. 2d at 955. The broker made two transactions, without permission, that the plaintiffs claimed caused losses. The plaintiffs brought a state court suit against the defendants for breach of contract, breach of fiduciary

---

[4] Market-timing cases bring claims against defendants alleging damage to long-term mutual fund investors from an arbitrageur's short-swing trading strategy that exploits differences in the closing prices of the funds on different exchanges around the world.

5

duty and negligent supervision. Defendants removed on SLUSA grounds, and the plaintiffs sought remand to state court. The court found that SLUSA did not apply and granted remand. The court's analysis is instructive and applicable here.

First, the court noted that "SLUSA's preemption and removal provisions provide broad, but not unlimited, scope. Id. at 958 (quoting Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 323 F.3d 116, 123 (2d Cir. 2003) (emphasis in original). The court then analyzed the plaintiffs' complaint and noted that "plaintiffs carefully crafted their Complaint to avoid any hint of misrepresentation or omission of material fact." Id. at 959. Nonetheless, the defendants argued that the promise not to buy or sell without first obtaining plaintiffs' permission was a misrepresentation, because the broker ultimately did buy and sell without permission. Further, defendants argued that an omission was present because the broker did not inform the plaintiffs of the transactions until after they were completed. Id. The court rejected these arguments:

> The Plaintiffs' Complaint alleges classic breach of contract: the parties contracted for a service that included an agreement that Defendant Hill would not buy or sell their securities without their express authorization; he sold their securities and repurchased them without authorization; they suffered damages as a result. Defendants would have the Court read into this breach of contract and unauthorized trading a misrepresentation or omission of material fact sufficient to qualify as securities fraud and require preemption under SLUSA. The Court is not convinced.

Id. at 961 - 62. In reaching its conclusion, the court relied on the Seventh Circuit's formulation in Consolidation Services that a broken promise is not necessarily a misrepresentation because otherwise every breach of contract would constitute a fraud. Id. at 962 (citing Consolidation Services, 185 F.3d at 823). Cf. Dersch Energies, Inc. v. Shell Oil Co., 314 F. 3d 846, 862 (7th Cir. 2002) (in a case brought pursuant to the Petroleum Marketing Practices Act ("PMPA") the Court

notes that the "PMPA was not designed to provide franchisees with a federal forum for the resolution of run-of-the-mill contract disputes like those at issue in this case").

In <u>Norman v. Salomon Smith Barney, Inc.</u>, 350 F. Supp. 2d 382 (S.D.N.Y. 2004), plaintiffs brought claims for breach of fiduciary duty and breach of contract against the defendant. Plaintiffs had opened individual investment accounts and contracted for individualized investment management services based upon the recommendations of the defendant's research analyst, recommendations that the plaintiffs alleged were tainted by conflicts of interest. <u>Id</u>. at 384. The defendants sought to dismiss the breach of fiduciary duty and breach of contract claims pursuant to SLUSA. The court held:

> Here, the gravamen of the complaint is plainly a straightforward breach [of contract] claim: plaintiffs purchased a service (portfolio management) pursuant to a contract, paid fees for that service under the contract, and now allege that they did not receive the full range of services paid for, and suffered damages as a result.

<u>Id.</u> at 387. As in <u>Norman</u>, here the Complaint simply alleges that the Plaintiffs contracted for a service (best execution), they did not receive that service, and they have been damaged by the breach. The Plaintiffs make no allegations of any misrepresentation or omissions. Accepting Fidelity's argument to the contrary would turn any broken promise into a fraud, a practice rejected by the Seventh Circuit in <u>Consolidation Services</u>. <u>See</u> <u>Consolidation Services</u>, 185 F. 3d at 823.

This Court's Second Order to Show Cause brings several cases to the parties' attention in which courts found that SLUSA applied to the asserted claims. Respectfully, these cases are inapposite, because they involve far more significant allegations of misrepresentations and omissions in connection with the purchase and sale of a security than alleged by Plaintiffs Kurz and Heinzl. For example, in <u>Rabin v. JP Morgan Chase Bank, N.A.</u> 2007 WL 2295795, *6 (N.D. Ill. 2007), the

7

plaintiffs brought a breach of contract claim that the court found was preempted by SLUSA because "the forty-four page Amended Complaint is rife with such claims of misrepresentations and omissions relating to the purchase of the mutual funds." For example, the court noted that the amended complaint alleged that defendants disseminated prospectuses to the plaintiff class that "omitted material facts," and that the registration statements for the securities "misrepresented material facts," and that had the SEC known the true facts "it would not have allowed such Registration Statements to have become effective...." Id.

Similarly, in Dommert v. Raymond James Financial Services, Inc., 2007 WL 1018234, *2-3 (E.D. Tx. 2007), the court found SLUSA applicable because the plaintiff's complaint alleged that defendants "did not disclose important information, including material details about fees and financial gain retained by defendants," that defendants' system was "wrought with conflicts of interest in the form of undisclosed financial incentives," and that, in general, the defendants failed "to disclose important information regarding fees, conflicts of interest, and renumeration." With such allegations, the court found that the plaintiff's claims were "clearly based upon alleged fraudulent omissions." Id. at *8. "The core basis of her claims is that the Defendants failed to disclose important information to the Plaintiffs, including material details about fees and financial gain retained by Defendants, luring investors into paying excessive fees." Id.

In Potter v. Janus Investment Fund, 483 F.Supp. 2d 692, 693 (S.D. Ill. 2007), the plaintiff brought a market-timing claim against defendants arguing that their conduct caused their securities to become devalued. Thus, there was no question that the plaintiff alleged "a misrepresentation concerning the value of the securities or the consideration received in return." Id. at 699. Plaintiffs, however, argued that because they did not allege scienter, a knowing misrepresentation, SLUSA did

not apply. The court rejected this argument finding that SLUSA applied to allegations of misrepresentation, regardless of whether defendants made those misrepresentations within intent or not. Id. at 699. See also Broadhead Limited Partnership v. Goldman, Sachs & Company, 2007 WL 951623, *1, 5 (E.D. Tx. 2007) (plaintiff alleged that defendant had a duty to disclose certain fee information and failed to disclose the information); Felton v. Morgan Stanley Dean Whittier & Co., 429 F.Supp 2d 684, 693 (S.D. N.Y. 2006) (finding that plaintiff's allegation that defendant violated an exchange rule that stated: "no material fact or qualification may be omitted if the omission, in light of the context of the material presented, would cause the communication to be misleading," alleged a fraudulent omission and came within SLUSA); McCullagh v. Merrill Lynch & Co., 2002 WL 362774, *4 (S.D.N.Y. 2002) (there was no dispute that plaintiff's allegations concerned misrepresentations or omissions regarding the quality of investment advice; dispute centered around the "in connection with" requirement of SLUSA); Behlin v. Merrill Lynch, 311 F.3d 1087, 1094 (11th Cir. 2002) (plaintiff specifically alleged that defendant "negligently, recklessly or intentionally misrepresented" material facts, "suppressed the true facts concerning" the issues alleged, such that it was "clear that the crux of the complaint was that the defendants either misrepresented or omitted crucial facts...."). In this case, there are no allegations of misrepresentation comparable to those made in the cases discussed above.

A defendant may not use SLUSA to avoid every possible state court claim by recasting any lawsuit in which a securities broker is a defendant into a securities fraud action. See Paru v. Mutual of America Life Ins. Co., 2006 WL1292828 (S.D.N.Y. May 11, 2006); Magyery, 315 F.Supp. 2d at 959. Here, the gravamen of the Complaint is plainly a straightforward breach of contract claim. Indeed, aside from alleging that the class members were third party beneficiaries to the contracts,

there is no allegation of any statements made by Fidelity to Plaintiffs, much less any material misrepresentations or omissions. Accordingly, SLUSA is not applicable.

**B.** **The Fourth Criterion: "In Connection with the Sale or Purchase of a Covered Security"**

As with the Third Criterion, Fidelity cannot prove this criterion and, again, this Court lacks jurisdiction without it. In Gavin v. AT&T Corp., 464 F.3d 634 (7th Cir. 2006), the Court had occasion to analyze SLUSA's "in connection with" requirement. In Gavin, defendant AT&T entered into a merger with MediaOne in which MediaOne shareholders could exchange their shares for a combination of AT&T shares and cash. AT&T's transfer agent would make the exchange at no charge. AT&T sent out two notices asking former MediaOne shareholders to exchange their shares through its transfer agent. Subsequently, AT&T hired another company to "round up" any remaining shareholders who had not yet exchanged their shares. This company sent out a third letter warning straggling shareholders that their failure to exchange their shares might result in an escheat of their stock to the state. The letter informed shareholders that the company would perform the exchange for a $7 fee and did not inform the shareholders that they could obtain the same service at no charge through AT&T's transfer agent. Subsequently, plaintiffs sued the defendants for fraud in Illinois state court. The defendants removed the case to federal court pursuant to SLUSA and the plaintiffs moved for remand. The district court denied the motion for remand and plaintiffs appealed. Gavin, 464 F.3d at 636-38.

On appeal, the Seventh Circuit found that the alleged fraud, the failure to mention that shareholders could exchange their shares at no fee, could not be said to have occurred "in connection with" the purchase or sale of the securities and, accordingly, SLUSA did not apply. Id. at 638. In

reaching this conclusion, the Court made several observations that are applicable to the claim here. First, the Court noted that upon the announcement of the merger, the former MediaOne shareholders became beneficial owners of AT&T. The transaction in shares occurred at that point. The Court continued:

> The alleged fraud, the omission... of any mention of the free option -- happened afterwards and had nothing more to do with federal securities law than if [Defendants] had asked the MediaOne shareholders "do you want your AT&T shares sent to you by regular mail or by courier?" and had charged an inflated fee for the courier services.

Id. at 638.

Similarly, here, Fidelity's breach of contract did not occur "in connection with" the purchase or sale of any security. There is no allegation that Fidelity made any misrepresentations or omissions at the time that Plaintiffs or the class purchased their shares in the Fidelity mutual funds. Indeed, Plaintiffs specifically disclaim any such assertion. Complaint at ¶ 3. Rather, the breach occurred after Plaintiffs were already shareholders of Fidelity funds and, as in Norman involved the performance of a contract after their investment in the Funds.

The Gavin Court also rejected any attempt by the defendants to stretch the "in connection with" requirement. The defendants argued that the misrepresentation and omission regarding the $7 charge to obtain exchange services that would have been provided for free, would not have occurred had there been no merger and that the merger was "in connection with" a purchase or sale of securities. The Court rejected this reasoning:

> Of course there is a literal sense in which anything that happens that would not have happened but for some prior event is connected to that event. In that sense the fraud of which the plaintiff complains is connected to the merger without which there would not have been

11

> such a fraud against the plaintiff and her class. But in the same sense the fraud is connected to the Big Bang, without which there would never have been a MediaOne or even an AT&T.

Id. at 639.

Similarly, while the breach of contract at issue here would not have occurred had Fidelity not been in the market to hire a broker to execute various securities transactions, the breach of its best execution obligations is no more "in connection with" the purchase or sale of securities than the Big Bang. As the Seventh Circuit noted, "the 'connection' requirement must be taken seriously." Id. at 640 (citing Frymire-Brimati v. KPMG Peat Marwick, 2 F.3d 183, 189 (7th Cir. 1993)). "Otherwise SLUSA would apply to a class action by shareholders who suffered paper cuts when they opened the letters informing them of their rights under the merger." Id. at 639. "Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud." Id. at 630.

The Seventh Circuit in Gavin cited approvingly to Gurwara v. LyphoMed, Inc., 937 F.2d 380 (7th Cir. 1991), as an illustration of "the limitations of 'in connection with.'" Gavin 464 F.3d at 639. In Gurwara, the plaintiff brought a securities fraud action claiming that his employer made misrepresentations about the employee's status that affected his right to exercise his stock options. Gurwara, 937 F.2d at 381. The Court found that the defendant's misrepresentations did not occur "in connection with" the purchase or sale of securities, but, instead, went to Gurwara's opportunity to purchase the stock at the described price." Id. at 382. "It in no way related to the value of that stock." Id.

Similarly, here, Plaintiffs refer only to the breach of contract by which the Defendants would obtain execution services. Plaintiffs make no allegations regarding the purchase or sale of any security and there are no allegations that Defendants' breach in any way affected the price of any

security. Rather, Plaintiffs' claim is more in line with a number of cases finding that SLUSA's "in connection with" requirement was not met where the conduct complained of centered on the selection of a broker rather than the selection of a security.

For example, in French v. First Union Securities, Inc., 209 F.Supp. 2d 818, 823 (M.D. Tenn. 2002), plaintiffs sought to represent a class of former brokerage clients of the defendant. The plaintiffs alleged that the defendant placed their accounts with a particular broker that the defendant knew had an extensive history of defrauding his clients.[5] The plaintiffs alleged that the defendant had a duty to disclose the broker's history to the clients and had the clients known of this history they would have never permitted the broker to act on their behalf. Id. The plaintiffs brought state law claims to rescind the transactions entered into with the broker. The defendant sought to dismiss the claims pursuant to SLUSA. Id.

In considering the application of SLUSA, the court examined the "in connection with" requirement. The court began by noting that even an expansive reading of this requirement must have limits:

> Thus, where a fraudulent scheme involves a simultaneous security transaction and breach of fiduciary duty, the breach is considered to be "in connection with" securities sales. However, in order for a breach to be "in connection with" securities sales, the breach of the fiduciary duty must do more than simply implicate securities. Rather, there must be a showing of a nexus between the fraud and a securities transaction.

Id. at 824 (analyzing SEC v. Zandford, 533 U.S. 813 (2002)).

---

[5]Indeed, the plaintiffs alleged that the broker used his position in order to have his accounts invest in his own venture-a cross dressing/cowboy nightclub. French, 209 F.Supp. 2d at 823.

13

The court held that the plaintiffs complained merely as to the choice of a broker, rather than any particular securities transaction. Accordingly, the "in connection with" requirement was not satisfied:

> Although Zandford espoused an expansive reading of the "in connection with" language, there still must be a connection between the action and some sort of securities transaction. Where, as here, the plaintiffs' claims relate to a broker's inherent fitness to execute trades and make investment decisions on behalf of their client, a fraud action is not, "in connection with" the purchase and sale of a covered security. (Id. at 827)
>
> ***
>
> Here, First Union's omissions related to Mr. Phillips' qualifications, not his actual investment decisions. Therefore, the claims brought by the plaintiffs are not preempted by the SLUSA's "in connection with" language and will not be dismissed on the basis of preemption. (Id. at 828).

Similarly, in Shaw v. Charles Schwab & Co. Inc., 128 F.Supp. 2d 1270, 1271 (C.D. Cal. 2001), the plaintiffs sought to represent a class of investors who used the defendant's website in order to conduct purchases and sales of stocks, options, and other securities. The plaintiffs alleged that the defendant misrepresented the pricing structure and the efficacy of its website. The plaintiffs brought state law claims in state court and defendant removed on SLUSA grounds. Id.

The court granted the plaintiffs' motion for remand, finding that the plaintiffs' misrepresentation claims did not occur "in connection with" the purchase or sale of securities:

> Presently, plaintiffs' claims relate to defendant's commission rate for web-based trading and the efficacy of defendant's web-based trading system. The claims relate to the vehicle by which Schwab delivers securities rather than the securities themselves. Plaintiffs have not alleged any misrepresentations or other misfeasance that is intrinsically related to the securities being traded. The plaintiffs do not allege the defendant's fraud induced them to invest in particular securities. Rather, the plaintiffs contend that defendant's fraud

>induced them to select defendant as their broker rather than some other brokerage firm. It would appear that plaintiffs' suit lies more in the realm of consumer protection than securities litigation. Consequently, the court finds that SLUSA does not preempt Plaintiffs' state law claims.

Id. at 1274. See also McEachern v. Equitable Life Assurance Society of the United States, 2001 WL 747320, *2 (N.D. Ala. 2001) (in ordering the parties to provide further briefing, the court notes that SLUSA "does not cover claims which seek simply to hold the defendant to statements which are made in connection with the sale of the security" or transactions that are not "intrinsically related to securities being traded")(citations omitted).

As in French and Shaw, Plaintiffs' claim here goes to the suitability and contractually-mandated basis of retaining the executing broker chosen by Fidelity, rather than any particular investment decisions made by Fidelity. As a result, in this case there is no claim that occurred "in connection with" a securities transaction that would provide the basis for application of SLUSA to Plaintiffs' breach of contract claim. Accordingly, SLUSA does not apply here, and this Court, lacking subject matter jurisdiction, must remand this case to the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, State of Illinois.

## CONCLUSION

For the reasons discussed above, this Court lacks subject matter jurisdiction and must remand this case to the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, State of Illinois.

Respectfully submitted,

**KOREIN TILLERY, LLC**


BY: ___/s/_____
     **Steven A. Katz**
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844 - Telephone
(314) 241-3525 - Facsimile

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the forgoing was served upon all counsel of record via the Court's ECF filing system on this 29th day of November, 2007:


___/s/ Steven A. Katz___