# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



| Everett McKinley Dirksen United States Courthouse | Office of the Clerk |
|---|---|
| Room 2722 - 219 S. Dearborn Street | Phone: (312) 435-5850 |
| Chicago, Illinois 60604 | www.ca7.uscourts.gov |

## NOTICE OF ISSUANCE OF MANDATE

March 17, 2009

To:   Norbert Jaworski
      UNITED STATES DISTRICT COURT
      Southern District of Illinois
      East St. Louis , IL 62201-0000

| | |
|---|---|
| No.: 08-2733 | DAVID KURZ and RAYMOND HEINZL, on behalf of themselves and all others similarly situated,<br>Plaintiffs - Appellants<br><br>v.<br><br>FIDELITY MANAGEMENT AND RESEARCH COMPANY and FMR CORPORATION,<br>Defendants - Appellees |

**Originating Case Information:**

District Court No: 3:07-cv-00709-JPG-DGW
Southern District of Illinois
District Judge J. Gilbert

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

| PARTIAL RECORD RETURN | Record to be returned later |
|---|---|
| Pleadings to be returned later: | 1 |

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                                              **Received by:**

_____3/17/09_____                                      s/Brenda K. Lowe, Deputy Clerk_____

form name: **c7_Mandate** (form ID: **135**)



CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-2733

DAVID KURZ and RAYMOND HEINZL, on behalf of a class,

*Plaintiffs-Appellants*,

*v.*

FIDELITY MANAGEMENT & RESEARCH CO. and FMR CO., INC.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 07-cv-709-JPG—**J. Phil Gilbert**, *Judge*.

ARGUED JANUARY 20, 2009—DECIDED FEBRUARY 23, 2009

Before EASTERBROOK, *Chief Judge*, SYKES, *Circuit Judge*, and KENDALL, *District Judge*.*

EASTERBROOK, *Chief Judge*. David Kurz and Raymond Heinzl are former investors in portfolios managed by Fidelity Management & Research Co. and FMR Co., Inc. (We refer to the plaintiffs, and the class they represent, as

---

*Of the Northern District of Illinois, sitting by designation.

2 No. 08-2733

Kurz and the defendants as Fidelity.) Kurz filed suit in state court, invoking state law and asserting that Fidelity broke a contract when some of its employees placed trades through Jeffries & Co. According to the complaint, Jeffries bribed the employees to send business its way. Trading through a broker that paid under the table violated the duty of "best execution" stated in rules of the National Association of Securities Dealers (now known just as its acronym NASD), according to the complaint.

"Best execution"—getting the optimal combination of price, speed, and liquidity for a securities trade, see Jonathan R. Macey & Maureen O'Hara, *The Law and Economics of Best Execution*, 6 J. Financial Intermediation 188 (1997)—affects the net price that investors pay or receive for securities and is accordingly widely understood as a subject of regulation under the Securities and Exchange Act of 1934 and related laws, such as the Investment Advisers Act of 1940 and the Investment Company Act of 1940. See, e.g., *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266 (3d Cir. 1998) (en banc). The Securities and Exchange Commission initiated a proceeding under the Investment Company Act and the Investment Advisers Act against Fidelity, which entered into a consent order that governs how future trades will be placed and executed. See *In re Fidelity Management & Research Co. & FMR Co., Inc.*, SEC Release No. IA-2713 (Mar. 5, 2008), available at http://www.sec.gov/litigation/admin/2008/ia-2713.pdf.

Like the SEC, Fidelity took the position that the misconduct of its employees (more precisely, its failure to disclose that misconduct to investors) is a securities-law

No. 08-2733 3

issue and removed the proceeding to federal court under the Securities Litigation Uniform Standards Act of 1998. The relevant part of this statute, 15 U.S.C. §78bb(f), provides:

> (1) No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
>> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>>
>> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
>
> (2) Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

See also *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) (discussing scope of 1998 Act); *Kircher v. Putnam Funds Trust*, 403 F.3d 478 (7th Cir. 2005) (same), vacated for lack of appellate jurisdiction, 547 U.S. 633 (2006). Fidelity maintained that, at least by plaintiffs' lights, it had either misrepresented that best execution would be achieved, or failed to disclose that best execution was not being achieved; either way, the wrong took place "in connection with the purchase or sale" of covered

securities because it affected trades in those securities (and potentially the net price obtained). The district court agreed and denied Kurz's motion to remand. 2007 U.S. Dist. LEXIS 80127 (S.D. Ill. Oct. 30, 2007). The court later entered judgment for Fidelity, 2008 U.S. Dist. LEXIS 45332 (S.D. Ill. June 10, 2008), because Kurz filed suit after the federal statute of limitations had run and also was unable to show injury. (A report prepared at the behest of Fidelity's independent trustees was unable to detect statistically significant effects on the costs of execution. See ¶¶ 86 and 87 of SEC Release IA-2713; a redacted version of the report is available on the SEC's web site.)

Section 78bb(f)(3) excludes some actions from the scope of removal and preemption. For example, a derivative action against an issuer, under the law of the issuer's state of incorporation, is excluded by subsection (f)(3)(A)(i). Kurz has not pursued a derivative claim—not only because he did not invest in Fidelity itself but also because he no longer holds a portfolio under Fidelity's management. (That Fidelity fired the misbehaving employees, none of whom was in senior management, and cooperated with the SEC to reduce the risk of recurrence, also would prevent resort to derivative litigation.) Kurz does not invoke any of the 1998 Act's other exceptions. He contends instead that the suit rests on contract law rather than "a misrepresentation or omission of a material fact" and therefore does not come within the 1998 Act in the first place. He also contends that the duty of best execution is not "in connection with the purchase or sale" of securities. That argument is frivolous, given

*Dabit*, 547 U.S. at 85–86, and *SEC v. Zandford*, 535 U.S. 813, 820–22 (2002). See also *United States v. O'Hagan*, 521 U.S. 642 (1997); *United States v. Naftalin*, 441 U.S. 768 (1979).

Our opinion in *Kircher* observed that a genuine contract action would be outside the scope of the 1998 Act. See 403 F.3d at 482–83. But where's the contract? Kurz does not contend that Fidelity broke a promise to him; instead he depicts himself as the third-party beneficiary of a contract between Fidelity and Jeffries, in which they promised to obey all of NASD's rules. When asked for a copy of *that* contract, Kurz's lawyer said that he did not have one—and for all we know none exists. Membership in NASD means being bound by its rules, but there may be no separate contract to that effect between members and NASD, or between one member (Fidelity) and another (Jeffries).

NASD's rules themselves are part of the apparatus of federal securities regulation. NASD is a "self-regulatory organization"; its requirements are adopted by notice-and-comment rulemaking (not by the mechanism of contract, which requires consent by all affected persons) and are subject to review and change by the SEC. See 15 U.S.C. §78*o*, §78s. Some of these rules are the source of legal duties, and not revealing to investors a failure to comply with one's duties about transactions in their securities can lead to liability under the securities acts. See *O'Hagan* and, e.g., *Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *Dirks v. SEC*, 463 U.S. 646 (1983). This is the reasoning that led the SEC to think that Fidelity had violated the Investment Company Act and the Investment

Advisers Act; it is some distance from a state-law contract action.

Fidelity did not break a promise to Kurz. The promise—if there was any independent of the NASD's rules—was made by Fidelity's employees to Fidelity itself. The employees promised to supply their honest services, and didn't. Kurz needs a way to turn the employees' misconduct into a legal claim in investors' favor. Contract law does not do the trick: if some of IBM's employees take bribes and this leads to higher prices for computers, IBM's customers could not sue IBM on a contract theory.

What does produce a claim is securities law. How Fidelity discharges its duties toward investors is a subject requiring disclosure under federal law. And although Fidelity itself (which is to say its top managers and board) did not know about the defalcations among members of the staff, and thus did not act with the scienter required for federal securities liability, see *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976), the employees who were on the take acted with eyes open. Failure to keep one's promises about the handling of securities can violate federal securities law. See, e.g., *O'Hagan* (partner in a law firm violated securities law by breaking a promise his firm made to a customer to keep information secret and not trade); *Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588 (2001) (making a promise about securities with intent not to keep it is securities fraud). Cf. *Carpenter v. United States*, 484 U.S. 19 (1987) (a reporter's failure to keep a promise to his newspaper about dealing in securities may be punished as mail

fraud). If any of its employees violated securities law, Fidelity is derivatively liable under the control-person clauses, 15 U.S.C. §78t (1934 Act), §80a–64 (Investment Company Act), because it had the right to control the way in which its staff executed trades.

The district court thus was right: Kurz had a federal securities claim, or he had nothing. And it is a bad securities claim, given the expiration of the federal statute of limitations and the class's inability to show loss causation. See *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Failure to show materiality may be another problem; we need not decide. The judgment of the district court is

AFFIRMED.